UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Respondent,<br><br>v.<br><br>ELVEN JOE SWISHER,<br><br>    Defendant-Movant. | Case No. 1:09-CV-055-BLW<br>            1:07-CR-182-BLW<br><br>**ORDER** |

## INTRODUCTION

Pending before the Court is Movant Elven Joe Swisher's ("Swisher") Motion to Permit Discovery (Dkt. 14). Having reviewed the Motion, the Government's Response (Dkt. 15), Swisher's Reply (Dkt. 16),[1] and the underlying criminal record, the Court enters the following Order denying the Motion for Discovery.

## BACKGROUND

The facts underlying this case are extremely complex. The Court will only briefly summarize those necessary to resolve the discovery motion.

---

[1] All further docket numbers shall refer to the underlying criminal case, CR-07-182-S-BLW, unless otherwise noted.

Swisher sought benefits from the Veteran's Administration ("VA") claiming that he suffered from post traumatic stress syndrome ("PTSD") arising out of his Marine Corps experience in a secret mission rescuing American prisoners of war after the end of the Korean War. He further claimed that he was awarded the Purple Heart and other medals and citations based on this combat experience and resulting wounds. The VA awarded benefits based on documentation Swisher supplied.

Swisher subsequently testified as a Government witness in a murder-for-hire case prosecuted in the District of Idaho over which visiting Judge Richard C. Tallman presided. *United States v. David Roland Hinkson*, CR-04-127-S-RCT. Swisher testified that based on his statements to Hinkson regarding his military experiences, Hinkson asked him to torture and kill a federal Judge, an IRS Special Agent, and an Assistant U.S. Attorney. See [United States v. David Hinkson, 585 F.3d 1247, 1251 (9th Cir. 2009), reh'g denied and dissent vacated and superseded, 611 F.3d 1098 (9th Cir. 2010)](). Hinkson was convicted of the charges.

Questions arose during Swisher's testimony regarding his claims of valor and entitlement to wear the Purple Heart and other medals. Following the trial, the Government instituted an investigation into Swisher's claims.

The Government charged Swisher in a four-count Indictment with (1) wearing various unauthorized military medals; (2) two counts of making false statements to the VA supported by a forged, counterfeit, or falsely altered certificate of discharge from the United States Marine Corps; and (3) theft of government funds by effectively stealing

disability benefits for PTSD from the VA based on those false statements. *Indictment*, Dkt. 1.

Swisher retained M. Lynn Dunlap ("Dunlap") and, as trial neared, Britt Groom ("Groom") as well. Shortly after his appearance, Dunlap secured two continuances of the trial date to engage in discovery. On various dates, Dunlap requested from the Government documents from the Department of Defense, United States Marine Corps, and the VA among other agencies. *See, generally, Aff. in Support of Mot. to Continue*, Dkt. 16-1; *Notice of Req. for Disc.*, Dkt. 18; *Stipulation for Mot. to Continue*, Dkt. 20; and *Affs. in Support of Third Mot. to Continue,* Dkts. 27 and 28.

Dunlap eventually filed a Motion to Compel seeking an order from the Court directing the Government to produce copies of numerous documents and records dating back to 1954 pertaining to Swisher's military service. *Aff. in Supp. of Mot. to Compel*, Dkt. 30. The Government opposed the Motion to Compel on the grounds that it had engaged in open-file discovery, had exceeded the discovery obligations of Fed. R. Crim. P. 16, and had fully disclosed any *Brady* material in its possession. *Resp. to Mot. to Compel*, Dkt. 32. The Government had provided its entire file together with the complete VA file, Swisher's military personnel file (which consisted of approximately 150 pages), and other unrelated personnel documents regarding Swisher's service. *Id*. at 2.

The Government advised that it had also requested documents from Headquarters United States Marine Corps Correspondence Section, National Personnel Records Center, the Military Archives Branch of the Commandant of the Marine Corps, the Marine Corps

History Division, and the National Archives in response to Swisher's requests. *Id*. at 2-3. Those agencies forwarded "even tangentially related documentation." *Id*. at 3.

The Court denied the Motion to Compel finding that the Government had met its duties under [Rule 16](#) and *Brady*. *Mem. Dec. and Order*, Dkt. 41. Following a jury trial, Swisher was convicted of all counts. *Special Verdict*, Dkt. 66. The Ninth Circuit affirmed his convictions.

Swisher alleges in his § 2255 Motion several claims of ineffective assistance of counsel most of which are based on conflict of interest. He alleges that defense counsel, Dunlap and Groom, had an actual conflict of interest arising out of their former representation of Hinkson and that their performance was deficient in several other respects unrelated to the alleged conflict of interest.

## REVIEW OF MOTION FOR DISCOVERY

**1.**     **Legal Standard**

Unlike the usual civil litigant, a habeas petitioner is not entitled to broad discovery as a matter of course. [*Bracy v. Gramley*, 520 U.S. 899, 904 (1997)](#) (addressing the substantially similar Rule 6(a) of the Rules Governing Section 2254 proceedings). *See also* [*Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993)](#) ("[T]here is simply no federal right, constitutional or otherwise, to discovery in habeas proceedings . . . ."). However, "[a] judge *may*, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practice and principles of law." *Rule 6 (a) of Rules Governing Section 2255 Proceedings*

("2255 Rules") (emphasis added). Good cause exists when there is "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy*, at 908-09.

Rule 6 requires that the party seeking leave of court provide reasons for the request together with any proposed interrogatories, requests for admissions, or document requests. *2255 Rule 6(b)*. Doing so enables the Court to evaluate whether the discovery would lend support to adequately articulated claims involving specific factual allegations. Discovery is not to be used for "fishing expeditions to investigate mere speculation" or for a prisoner to "explore [his] case in search of its existence." *Calderon v.U.S. District Court (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996) (citations omitted). *See also United States v. Finkel*, 165 Fed. Appx. 531 (9th Cir. 2006). Indeed, rather than facilitating a fishing expedition, "[h]abeas is an important safeguard whose goal is to correct real and obvious wrongs." *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999).

**2. Request**

Swisher's discovery motion is divided into (1) proposed interrogatories, requests for production of documents, and requests for admissions directed to Roland Hinkson (David Hinkson's father), Gary Stone (former Marine Corps League investigator), Wesley Hoyt (counsel for David Hinkson), and C.W.O. Miller (former military officer) in

support of his conflict of interest claim,[2] and (2) a request for subpoenas to various agencies and entities in support of his remaining claims.

**3.     Analysis**

Swisher has complied with Rule 6 in that he has stated his reasons for requesting the discovery and has included his proposed discovery requests. However, the Court cannot find good cause for granting the discovery requests to further his claims of conflict of interest and ineffective assistance of counsel.

**A.     Conflict of Interest**

Swisher essentially alleges that Dunlap and Groom were more interested in assisting the Hinkson family and attorney bolster Hinkson's chances of obtaining a new trial than they were in defending him. He expects to prove this claim by demonstrating ties between counsel and the individuals seeking to discredit him on behalf of Hinkson supporters.

Swisher's requests directed to each of the four named individuals in support of this claim are expansive in scope. He requests the identities of anyone known to them who had any contact with trial counsel at any time since 2001, any contact each had with

---

[2] Swisher had sued these individuals or the entities with which they were associated. *See Swisher v. Collins, et al.*, CV-06-338-S-EJL. In all, Swisher sued 20 John and Jane Does and over 40 individuals and entities, including the Marine Corps League, for defamation and four federal agencies for violations of the Privacy Act arising out of an investigation into his claims about his past military service on his application for increased benefits and during testimony at the *Hinkson* trial. Visiting Judge Tena Campbell granted summary judgment in favor of the federal agencies, the Marine Corps League, Hinkson's attorney in the murder-for-hire case, and two other Defendants. *Mem. Dec.*, Dkt. 251. That decision is currently on appeal. The Court had previously granted the motions to dismiss of several of the other named Defendants. *Mem. Dec. and Order*, Dkt. 156.

others regarding him since 2004, and any person known to them who has any knowledge of facts related to his case.³ He also requests supporting documentation from those individuals and admissions from each of the four that they had contacts with the VA, Marine Corps, Marine Corps League, or U.S. Attorney's Office regarding him.

Under the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." [Fed. R. Civ. P. 26(b)](). A party may serve interrogatories, requests for production of documents, or requests for admissions *on any other party* subject to the limitations of the rules pertaining to each. [Fed. R. Civ. P. 33, 34, and 36](). Requests for discovery directed to a prosecutor, investigator, probation officer, or defense counsel may perhaps be appropriate in a § 2255 proceeding. However, Swisher has not cited any authority for discovery requests directed to individuals who are not only not parties but who are unrelated to the underlying criminal action.

### B. Ineffective Assistance of Counsel

---

³ For example, Interrogatory 1 (addressed to Roland Hinkson) states: "Please identify every person you know who had any direct or indirect contact with Lynn Dunlap and/or Brit Groom during the years 2001 to present. For each person identified, please give their full name, address, phone number, the date and time of their contacts with Lynn Dunlap and/or Brit Groom and any information you have regarding the contents of said direct or indirect contact. (Use additional pages as needed.)"

Request for Production of Documents 1 (also addressed to Roland Hinkson) states: "Please produce a copy of each and every document, including notes, memorandums, letters, emails, correspondence, records, electronic and tape recordings, statements, documents or any related to or produced by you or persons you know who have had contacts, with Lynn Dunlap and/or Brit Groom during the years 2001 to present." *Mem. in Supp. of Mot. to Permit Disc.* at 5-6, Dkt. 14-1 in civil case.

In support of his non-conflict of interest ineffective assistance of counsel claims, Swisher requests that he be permitted to subpoena eight entities for documents and correspondence pertaining to him and to others serving with him in military operations during calendar years 1954 through 1957. The various entities are (1) Bremerton, Washington Naval Station for Bangor Torpedo Station; (2) U.S. Naval Hospital, Yokuska, Japan; (3) Naval Air Station, Atsugi, Japan; (4) Middle Camp Fuji and Gotemba, Japan; (5) National Archives, Washington, D.C.; (6) Department of Defense, Washington, D.C.; (7) Department of Navy, Office of the Judge Advocate General, Washington, D.C.; and (8) Middle Camp Fuji, Japan.

Swisher contends his attorneys should have requested the medical records, day logs, tower flight logs, motor pool daily logs, travel itineraries of General Erskine, documents pertaining to troop movements of his Battalion, documents of General Erskine regarding the POW situation in North Korea, and many other similar documents.[4] Implicit in his argument is that had counsel made these requests, there would have been evidence that there was indeed a top secret mission in North Korea to free POWs, that he participated in the mission, that he was treated at the hospital for wounds sustained in the mission for which he was subsequently awarded medals, and that by failing to discover them, counsel's representation was deficient.

---

[4] Swisher states that General Erskine was the Assistant Secretary of Defense in Special Operations under Presidents Eisenhower and Kennedy and was in charge of the special classified operation in which he participated. *Mem. in Supp. of Mot. to Permit Disc.* at 5, Dkt. 14-1 in civil case. Submitted with Swisher's Discovery Memorandum are two letters illustrating the futility of requesting records pertaining to General Erskine. *See Disc. Mem.*, Exs. 4 and 6.

The record reflects that the Government turned over all available documents and introduced at trial much of what Swisher now seeks in his discovery request, including medical records, clinical record consultation sheets, unit diaries, unit rosters, and an expeditions-engagement-combat record. None referred to any battles or rescue missions in Korea, to any combat injuries sustained by Swisher, or to medals earned by Swisher. *See Def.'s Amended Exhibit List*, Dkt. 64; *Pl.'s Exhibit List*, Dkt. 65.

Swisher's request is a classic fishing expedition not unlike that of a defendant's in a § 2254 case who also sought numerous discovery subpoenas. There, the court found that the petitioner was seeking "to justify this broad discovery by describing an array of claims of ineffective assistance of counsel." *Sherman v. McDaniel*, 333 F.Supp. 2d 960, 973 (D.Nev. 2004). The court concluded:

> For the most part, at the heart of these claims, petitioner essentially asserts that his trial counsel unreasonably failed to seek the discovery that petitioner seeks now. If not more than that were required for a showing of good cause under *Bracy*, habeas petitioners would have a free pass to conduct any discovery remotely related to their case.

*Id.* at 974-75.

Similarly, here, such expansive discovery in the face of repeated indications in the underlying criminal action that no documentary evidence exists to support Swisher's claims is clearly not contemplated by Rule 6.

**4.    Conclusion**

Further discovery is simply not warranted in the face of the overwhelming odds against Swisher's finding support for his claim.[5] Indeed, it is unlikely that the military bases and hospital retain records at their location for over fifty years.

Had there been no inquiry at all or only minimal inquiry into records supporting his defense in the criminal case, the Court might be inclined to grant a portion of Swisher's motion. However, when all evidence points to the fact that there was no secret mission, much less that Swisher was involved in it, and no evidence that he was wounded in combat, the Court will deny the motion in its entirety on the grounds that Swisher has not demonstrated the good cause required by Rule 6. Obviously, if documents existed proving Swisher's claims, he would be vindicated. However, the chances are so remote that they exist, the Court will not exercise its discretion to order the requested discovery.

## ORDER

**IT IS ORDERED** that Movant's Motion to Permit Discovery (Dkt. 14) is **DENIED**.

---

[5] Testimony at trial demonstrates the futility of subpoenaing several of the requested documents. *E.g.*, Annette Amerson, Program Manager for the Unit Lineage and Honors Program researched the unit lineage (history of a unit's medal honors) of Swisher's unit, Golf Company, Third Battalion, Third Marines, Third Marine Division (the "333"), during 1955 to 1956. She found no indication that the 333 had engaged in any combat at all between World War II and the Viet Nam War or that the unit had had a mission into North Korea in 1955. Tr. 345-50. Lt. Col. Elaine M. Hensen, Assistant Head for the Military Awards Branch at Headquarters Marine Corps, testified that there was no support for Swisher's claim that he was awarded any citations or awards or medals, that no expeditionary medals were issued from 1955 to 1957, that the unit diaries did not reveal any top-secret missions, injuries, or deaths. Tr. 345-53. Jeffrey Shattuck, Head of the Records Correspondence Section, Personnel Management Support Branch, testified that there was no record in Swisher's personnel file of any combat or enemy encounters and no applications for citations of Swisher's behalf. Tr. 313-20. Shattuck also testified that there would have been a paper trail of recommendations and approvals for medals or citations awarded given the multiple copies of each document and the required levels of approval.

	DATED:  **February 13, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**ORDER - 11**